UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELEES LANTON,

               Petitioner,                             Case Number 06-CV-11103
                                                 Honorable George Caram Steeh

v.

BLAINE LAFLER,

               Respondent.
_____/

**OPINION AND ORDER DENYING THE AMENDED PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS**

This matter is before the Court on Petitioner Elees Lanton's amended petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. Petitioner was convicted in the Wayne Circuit Court after a jury trial of armed robbery, MICH. COMP. LAWS § 750.529, possession of a firearm by a felon, MICH. COMP. LAWS § 750.522f, and commission of a felony with a firearm. MICH. COMP. LAWS § 750.227b. Petitioner was sentenced to 15-to-30 years for the armed robbery conviction, 40-to-60 months for the felon in possession conviction, and a consecutive two years for the felony-firearm conviction. The amended petition claims that: (1) insufficient evidence was presented at the preliminary examination to bind Petitioner over for trial; (2) insufficient evidence of Petitioner's identity was presented at trial to sustain his conviction for armed robbery; (3) the prosecutor committed misconduct at trial; (4) the trial court incorrectly instructed the jury regarding the beyond-a-reasonable-doubt standard; (5) the trial court incorrectly scored the sentencing guideline variables; (6) Petitioner was denied the effective assistance of trial counsel; (7) Petitioner was denied the effective assistance of appellate counsel; (8) Petitioner is actually innocent; and (9) Petitioner was sentenced based on facts not found by a jury beyond a reasonable doubt. The Court finds that

Petitioner's claims are without merit or procedurally defaulted. Therefore, the petition will be denied.  The Court will also deny Petitioner a certificate of appealability and deny permission to proceed on appeal in forma pauperis.

## I. Facts and Procedural History

Petitioner's conviction arises from the robbery of a motel clerk.  Steven Russell testified at trial that in the earlier morning hours of August 24, 2003, he was helping a customer unlock a motel room door when he saw a green Monte Carlo pull into a nearby parking lot, turn off its lights, and back behind two trees.  Russell thought he saw three occupants in the car.

When Russell returned to the motel office, he saw one man in front of the counter and another man walking out from behind the counter.  The men announced a stick-up and pointed handguns at Russell. At trial, Russell testified that he did not think either man was Petitioner. He explained that the perpetrator who stood in front of the counter wore glasses, had "cornrows," and was darker complected than Petitioner, and that the other perpetrator was a co-defendant that he had identified at the preliminary examination. Russell admitted that he had identified Petitioner as one of the perpetrators at the preliminary examination, but he no longer believed that Petitioner was one fo the men who robbed him.[1]

Russell testified that one robber took the cash drop from the drawer behind the counter, and

_____

[1] At the preliminary examination, it appears Russell identified co-defendant Buyck as the man who stood in front of the counter, and Petitioner, who was wearing an NBA embroidered outfit, as the man who went behind the counter. The prosecutor's trial theory was that Buyck never entered the motel, but he was the getaway driver.  The prosecutor matched co-defendant Jackson's "cornrow" hairstyle from his arrest photograph with photographs taken from the motel surveillance video as the man who went behind the counter.  The prosecutor identified Petitioner as the man who stood in front of the counter by comparing photographs showing the outline of a "50" on that man's shirt with Petitioner's arrest photographs showing him wearing such a shirt. In other words, the prosecutor believed that Russell misidentified Buyck during the preliminary examination, and he believed Russell mistakenly switched Petitioner and Jackson's positions during the preliminary examination.

the man in front of the desk grabbed several packs of Newport cigarettes. After the men left, Russell called the police.

David Goldberg, an officer with the Livonia Police Department, who was on patrol nearby, was told to be on the lookout for a green Monte Carlo. He spotted such a vehicle on I-96 near the scene. He attempted to pull the vehicle over, but it sped away, and a car chase reaching speeds of over 100 mph developed. The Monte Carlo eventually crashed, and three men exited the vehicle and attempted to flee on foot. Two men fled north, and one man fled south. Goldberg followed the two men who ran north.

Buyck was caught hiding behind a house. A police dog was set loose after the other man who ran north, and the dog discovered Petitioner hiding in a vacant lot. Petitioner was wearing a darker "50-Cent" tee shirt and blue pants with NBA embroidery. Photographs of the two men were taken at the police station. At trial, Russell was shown the photograph taken of Petitioner at the police station, and despite the fact that he did not believe Petitioner was one of the perpetrators, he testified that the man who had been standing in front of the counter during the robbery was wearing the NBA embroidered clothing such as those seen in the photograph. Additionally, a still photograph taken from the motel surveillance video showed that the perpetrator who stood in front of the counter was wearing a shirt with "50" on it.

A semi-automatic handgun was found in the car along with the envelope containing the cash drop from the motel. The police also found three identification cards bearing different names, two driver's licenses, and a pack of Newport cigarettes in the car. Several partial finger prints were found on the cash drop envelope, including one that had a "similar" pattern to Petitioner's thumbprint, but the print was not of high enough quality to make a positive identification. The car was registered to Petitioner's girlfriend's parents. Following arguments, instructions, and deliberations, the jury found Petitioner guilty.

After Petitioner was sentenced, he filed a claim of appeal in the Michigan Court of Appeals.

He was appointed appellate counsel who filed an appellate brief that raised the following claims:

> I. The district court abused its discretion by binding [Petitioner] over as charged because the preliminary examination evidence was insufficient to establish probable cause to believe that he perpetrated the offense.

> II. [Petitioner's] conviction for armed robbery must be reversed where the prosecution failed to present legally sufficient evidence that he was one of the people who committed the offense.

> III. [Petitioner] was deprived of a fair and impartial trial due to prosecutorial misconduct.

> IV. [Petitioner] was denied due process and the right to a trial before a properly instructed jury, where the trial court gave erroneous reasonable doubt and aiding and abetting instructions.

> V. [Petitioner] must be resentenced because the statutory sentencing guidelines were misscored as to Offense Variable 1, and the sentence is a departure from the statutory sentencing guidelines imposed without compliance with departure requirements and he was denied the effective assistance of counsel, who did not object to the misscored guidelines.

The Michigan Court of Appeals issued an unpublished per curiam opinion affirming Petitioner's convictions. *People v. Lanton*, No. 255638 (Mich. Ct. App. June 16, 2005). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, raising the same issues. The Michigan Supreme Court denied Petitioner's application for leave to appeal because it was not persuaded that the questions presented should be reviewed. *People v. Lanton*, No. 129186 (Mich. Sup. Ct. Dec. 27, 2005).

On March 15, 2006 Petitioner filed his habeas petition in this Court, raising the same claims that he raised on direct appeal in the state courts. In March 2007, Petitioner retained counsel who filed motions for discovery and to hold the petition in abeyance. Petitioner requested a copy of the surveillance videotape recording of the robbery to prove his "actual innocence." This videotape was not presented at trial. The Court granted Petitioner's discovery request.

-4-

In September 2007, this Court issued an opinion granting Petitioner's motion to stay the federal habeas proceedings. Soon thereafter, Petitioner filed a motion for relief from judgment in the trial court, raising the following claims:

I. [Petitioner] received ineffective assistance of counsel, contrary to his Sixth and Fourteenth Amendments, as well as Const. 1963, Art. 1, § 20.

> A. Trial counsel failed to prepare for trial by interviewing material witnesses, obtaining discovery and relevant transcripts, and investigating the evidence.
>
> B. Counsel failed to develop a coherent theory of the defense.
>
> C. Trial counsel failed to challenge identification evidence, and failed to request a Wade hearing.
>
> D. Counsel failed to properly cross-examine witnesses.
>
> E. Trial counsel failed to move for a directed verdict.
>
> F. Trial counsel failed to object to erroneous jury instructions.
>
> G. Failure to object to the scoring of the variables.
>
> H. [Petitioner] suffered prejudice by his trial counsel's deficient performance.

II. [Petitioner's] rights were violated when [Petitioner] was sentenced on the basis of facts not found by a jury beyond a reasonable doubt, thus violating due process and his right to a jury trial. U.S. Const. Amend. V, VI, XIV. Const. 1963, Art 1, § 17.

III. [Petitioner's] Sixth and Fourteenth Amendment rights under the United States Constitution were violated when appellate counsel rendered ineffective assistance on [Petitioner's] appeal of right, establishing "cause" for failing to raise these issues on direct appeal.

IV. [Petitioner's] conviction is a miscarriage of justice because he is actually innocent.

V. [Petitioner's] convictions must be reversed because they are against the great weight of the evidence, and there was a miscarriage of justice.

VI. [Petitioner] should receive an evidentiary hearing.

On June 16, 2009, the trial court denied Petitioner's motion for relief from judgment because

Petitioner had not shown good cause and actual prejudice for failing to raise his claims during his direct appeal under Mich. Ct. R. 6.508(D)(3). The Court also, however, granted Petitioner's request for an evidentiary hearing on the claim that an enhanced copy of the videotape showed that he was not one of the perpetrators of the robbery.

The trial court held the evidentiary hearing on August 18, 2009. Petitioner claimed that on the enhanced version of the video it appeared that the man in front of the counter was wearing glasses, a feature that excluded Petitioner. The prosecutor disputed that the video showed glasses on the man standing in front of the counter. The trial court reviewed the original surveillance video, a slow motion version of the video, fourteen still photographs taken from the video, and the enhanced version of the video. On August 25, 2009, the trial court issued another order concluding that the new evidence did not make Petitioner's acquittal probable on retrial and denying the remaining part of the Petitioner's motion for relief from judgment.

Petitioner then filed a delayed application for leave to appeal with the Michigan Court of Appeals, but it was denied by form order citing Mich. Ct. R. 6.508(D). *People v. Lanton*, No. 298066 (Mich. Ct. App. Sep. 21, 2010). Petitioner appealed this order, but the Michigan Supreme Court likewise denied relief under Rule 6.508(D). *People v. Lanton*, No. 141900 (Mich. Sup. Ct. April 25, 2011).

Petitioner then filed a motion to re-open this case and amend the petition to include the claims that he presented to the state courts during his post-conviction review proceeding. The Court granted the motion.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).   An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.   A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).   The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id*. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*. (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

### III. Analysis

**A. Sufficiency of the Evidence at the Preliminary Examination**

Petitioner first claims that insufficient evidence was presented at his preliminary examination to justify binding his case over for trial. The claim is not cognizable in this action.

The Supreme Court held that the federal Constitution does not require that a probable cause hearing be conducted prior to a criminal trial. *Gerstein v. Pugh*, 420 U.S. 103, 119, 125 n. 26 (1975). Accordingly, the bind-over decision constitutes a state law issue which does not implicate a federal constitutional right and is not subject to review in a habeas proceeding. *See Shacks v. Tessmer*, 9

Fed. Appx. 344, 2001 WL 523533, *6 (6th Cir. 2001) (unpublished) (refusing to review state court determination that second-degree murder conviction rendered bind-over sufficiency of the evidence challenge moot); *Dorchy v. Jones*, 320 F. Supp. 2d 564, 578-79 (E.D. Mich. 2004) (denying habeas relief on state prisoner's claim that there was insufficient evidence to bind him over for trial); *see also Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (ruling that habeas relief is not available for perceived violations of state law).  Habeas relief is therefore not warranted on this claim.

## B.  Sufficiency of the Evidence at Trial

Petitioner next asserts that insufficient evidence was presented at trial to sustain his conviction for armed robbery.  Specifically, Petitioner challenges the sufficiency of the evidence offered to show his identity as one of the perpetrators of the crime.  Respondent asserts that the Michigan Court of Appeals decision rejecting this claim on the merits was not objectively unreasonable.

"The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 318-19 (internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's

resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith*, 132 S. Ct. 2, 4; 181 L. Ed. 2d 311 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id*. Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson,* 132 S.Ct. 2060, 2065; 182 L. Ed. 2d 978 (2012).

Here, the Michigan Court of Appeals decided Petitioner's claim against him on the merits as follows:

> Defendant maintains that, at trial, the prosecutor presented insufficient evidence to prove that he committed the armed robbery. n3 While defendant correctly asserts that, at trial, the desk clerk was more equivocal about his identification of defendant, ample evidence nonetheless supported his conviction.
>
> FOOTNOTES
>
> n3 "In sufficiency of the evidence claims, this Court reviews the evidence in the light most favorable to the prosecution and determines whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v. Fennell*, 260 Mich. App. 261, 270 (2004).
>
> The desk clerk testified that the man who robbed the motel had lighter skin than defendant, but he recalled that the man wore pants decorated with NBA emblems. A photo taken after defendant's arrest shortly after the robbery showed that defendant wore pants decorated with NBA emblems. Other evidence established that, as soon as the perpetrators left the motel with the money and cigarettes, the clerk called the police and described the men involved and their vehicle, a late model Monte Carlo. Shortly thereafter, Livonia police spotted the vehicle, followed it, and the driver of the Monte Carlo attempted to flee by increasing his speed to approximately one hundred miles per hour. The car ultimately crashed into a light pole and three men fled the vehicle on foot. The police captured defendant in very close proximity to the car crash and the police officer who followed the vehicle identified defendant as one of the occupants who ran from the scene of the crash.
>
> Evidence further established that the Monte Carlo was registered to close relatives of defendant's girlfriend and, inside the car, police found a prescription

-10-

bearing the name of defendant's relative. More importantly, however, the police recovered a handgun in the car, Newport cigarettes, and an envelope of cash from the Days Inn. The amount of money inside the envelope precisely matched the amount of money stolen from the motel and police were able to partially link a thumbprint on the envelope to defendant. This evidence was more than sufficient to convince a rational trier of fact that defendant committed the armed robbery and, therefore, defendant's claim of error is without merit.

*Lanton*, 2005 Mich. App. LEXIS 1468, *5-7.

The Michigan Court of Appeals recited the correct governing constitutional standard in discussing Petitioner's claim, and its conclusion that sufficient evidence was presented at trial to sustain Petitioner's convictions was reasonable.

Petitioner correctly notes that the victim's trial testimony indicated that he did not believe that Petitioner was one of the men who robbed him. Moreover, because there were three men in the Monte Carlo and only two robbers, the fact that Petitioner was one of the men in the car does not necessarily mean that he was one of the perpetrators. But the standard of review asks only whether the finding by the Michigan Court of Appeals that sufficient evidence was presented "was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S.Ct. at 2065. Here, despite the victim's trial testimony that he no longer recognized Petitioner as one of the perpetrators, he also testified that one of the robbers wore an outfit with NBA embroidery. When Petitioner was arrested he was wearing pants with NBA embroidery, and the victim identified the clothing depicted in Petitioner's arrest photograph as belonging to one of the perpetrators. Moreover, a still photograph from the surveillance video apparently showed that one of the robbers was wearing a shirt with "50" imprinted on it, and the photograph taken of Petitioner after his arrest also showed that he was wearing such a shirt. Lastly, although not conclusive, there was a partial match of Petitioner's thumb print on the cash drop envelope taken from the motel. Accordingly, while the evidence presented at trial may or may not have presented a close question for the jury given the victim's recantation, the evidence was sufficient to meet the "bare rationality" standard of *Coleman*.

Accordingly, Petitioner has not demonstrate entitlement to habeas relief based on this claim.

## C. Prosecutorial Misconduct.

Petitioner next contends that the prosecutor committed misconduct that rendered his trial fundamentally unfair. Respondent contends that the claim is defaulted because Petitioner's trial attorney failed to object to the alleged misconduct.

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181(1986) (citing *Donnelly*); *Parker v. Matthews*, 132 S. Ct. 2148, 2153; 183 L. Ed. 2d 32 (2012) (confirming that *Donnelly/Darden* is the proper standard).

The Michigan Court of Appeals rejected Petitioner's claim as follows:

> Defendant complains that the prosecutor denied him a fair trial because, in his closing argument, he commented that poor lighting may have caused the desk clerk to describe the Monte Carlo as green instead of blue. Because defendant failed to object to the comment, he must prove that the prosecutor's conduct amounted to plain error that affected his substantial rights. *People v. Thomas*, 260 Mich. App. 450, 454 (2004). In claims of plain error, "we will reverse only if we determine that, although defendant was actually innocent, the plain error caused him to be convicted, or if the error 'seriously affected the fairness, integrity, or public reputation of judicial proceedings,' regardless of his innocence." *Id.*, quoting *People v. Ackerman*, 257 Mich. App. 434, 448 (2003).

> We find no error or prejudice. It is well-settled that "[a] prosecutor may not make a statement of fact to the jury that is unsupported by evidence, but she is free to argue the evidence and any reasonable inferences that may arise from the evidence." *Ackerman*, *supra* at 450. The prosecutor did not err by inferring from the facts that, at 4:50 a.m., the conditions outside would have been dark. Further, while no witness testified about the condition of the parking lot lighting, the prosecutor did not state, as a fact, that the parking lot was poorly lit. He merely offered a possible explanation for why it may have been difficult to see the precise color of the vehicle

at that time of night.

> Further, were we to find any error in the prosecutor's remark, we would nonetheless affirm because defendant has not shown that he suffered any prejudice. Defendant was clearly not innocent of the crime and ample evidence supported his convictions. Moreover, his own attorney described the discrepancy in the color [*9] of the car to be a "minute" issue in the case. We agree, particularly where substantial evidence clearly linked defendant to the armed robbery.

*Lanton*, 2005 Mich. App. LEXIS 1468, *7-9.

The Court need not reach Respondent's procedural default defense because the claim is plainly without merit. *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings).

The prosecutor suggested during closing argument that Russell misidentified the Monte Carlo as green instead of blue because of the lighting in the parking lot. While Russell was never asked about the lighting in the parking lot, the suggestion was nevertheless a reasonable inference to make based on everyday experiences and common knowledge. More importantly, however, Petitioner can hardly argue that the comment caused any unfair prejudice. At worst, the comment was another attempt to link the car seen by Russell to the one that the police chased. But there can be little doubt that the police chased the correct vehicle because the cash drop envelope from the motel was found inside it. The case against Petitioner did not hinge on whether the police chased the right car; it hinged on whether Petitioner was one of the two men in the car who participated in the robbery. Accordingly, the comment by the prosecutor did not render Petitioner's trial fundamentally unfair.

### D.  Jury Instruction Defining Reasonable Doubt

Petitioner's fourth claim asserts that the jury instructions erroneously lowered the prosecutor's burden of proof. He also asserts that the instruction on aiding and abetting was

incorrect. The Michigan Court of Appeals found that the claim was waived because Petitioner's defense attorney specifically stated that he was satisfied with the jury instructions. Even if this claim were not waived, it must be rejected because it is without merit.

"The government must prove beyond a reasonable doubt every element of a charged offense." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (*citing In re Winship*, 397 U.S. 358 (1970)). "[S]o long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Id*. at 5, 114 S. Ct. at 1243 (internal citation omitted). "Rather, 'taken as a whole, the instructions [must] correctly convey the concept of reasonable doubt to the jury.'" *Id*. at 5, 114 S. Ct. at 1243 (*quoting Holland v. United States*, 348 U.S. 121, 140 (1954)) (alteration in original).

The trial court instructed the jury on the prosecutor's burden of proof as follows:

Now, the standard of proof is proof beyond a reasonable doubt. That's the only standard there is. There's no such thing as proof beyond a shadow of a doubt, and there's no such thing as proof beyond all doubt. It's proof beyond a reasonable doubt, which means exactly what the words signify. A doubt that's based on common sense. A doubt for which you can assign a reason for having.

A reasonable doubt, however, is not a vain, or emotional, or fictitious, or phony doubt. It's not a hunch or a feeling, it is not a possibility of innocence. It's the kind of a doubt that would make you hesitate before making an important decision.

If you can say that you have an abiding conviction to a moral certainty that the People have proven their case, then you're (sic) finding should be guilty. If you do not have an abiding conviction to a moral certainty, then your verdict should be not guilty.

Again, a reasonable doubt is a fair, honest, and reasonable doubt. A kind of doubt that would make you hesitate before making an important decision. It's the kind of a doubt that you should have a reason for having. It is not a vain, fictitious, emotional, or phony, or a hunch or a feeling. And certainly the People do not have to prove this case to you beyond the shadow of a doubt, or beyond all doubt, because no such proofs could ever be met.

Now, you decide the case on the evidence. The evidence in this case has been

the sworn testimony of the witnesses, and the exhibits which are admitted by the Court. That is the evidence in this case. You are to decide the case based on the evidence.

Tr. 3/30, pp. 39-40.

Petitioner takes issue with the trial court's "moral certainty" language. While the United States Supreme Court in *Cage v. Louisiana*, 498 U.S. 39, 41 (1990), invalidated a jury instruction that defined reasonable doubt in terms of "grave uncertainty" and "actual substantial doubt" and required conviction based upon "moral certainty," the Court later limited that holding in *Victor*. In *Victor*, the Court ruled that the mere use of the term "moral certainty" in a jury instruction defining reasonable doubt by itself does not violate due process, because it merely impresses upon the jury the need to reach a subjective state of near certainty of guilt. *Victor*, 511 U.S. at 14-16. The Court further found that use of the term "moral certainty" in the challenged instruction did not violate due process because the instruction provided that the jurors had to have an abiding conviction as to the defendant's guilt, equated moral certainty with doubt that would cause a reasonable person to hesitate to act, and told the jurors to consider the evidence without indulging in speculation, conjectures, or unsupported inferences. *Id*. at 21-22, 114 S. Ct. at 1250-51. The Court distinguished the instruction in *Cage*, which failed to provide any explanation or meaning for the phrase "moral certainty."

The Sixth Circuit has since held that the use of the term "moral certainty" does not automatically render a jury instruction on reasonable doubt fundamentally unfair. In *Austin v. Bell*, 126 F.3d 843 (6th Cir.1997), the Sixth Circuit ruled that a reasonable doubt instruction including the phrase "moral certainty" did not impermissibly lower the burden of proof because the instruction also provided that reasonable doubt was "an inability to let the mind rest easily" after considering the evidence. *Id*. at 847. The court concluded that the "moral certainty" language, considered in light of the entire instruction, did not create a reasonable likelihood that the jury impermissibly applied

-15-

the jury instruction. *Id.*

This case is consistent with *Victor* and *Austin*. The trial court's reasonable doubt instruction conveyed the proper degree of certainty for conviction to the jury, referring to an "abiding conviction" of guilt and equating moral certainty with a fair, honest, and reasonable doubt. The trial court also explained that Petitioner was presumed innocent and that the burden of proof was on the prosecutor. Given such circumstances, Petitioner cannot establish that the reasonable doubt jury instruction impermissibly lowered the burden of proof or otherwise rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

Petitioner also challenges the trial court's instruction on aiding and abetting. He is not entitled to relief on this claim because any error was harmless. The Supreme Court has explained that in cases involving review of a state-court criminal judgment under 28 U.S.C. § 2254, "an error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)). *Fry* adopted *Brecht's* more "state-friendly standard" for cases involving collateral review of state-court decisions. *Hereford v. Warren*, 536 F.3d 523, 532-33 (6th Cir. 2008). Under *Fry*, an error is considered not harmless when "the matter is so evenly balanced that the habeas court has grave doubt as to the harmlessness of the error." *Id.* at 533; *Patterson v. Haskins*, 316 F.3d 596, 609 (6th Cir. 2003).

In addition to armed robbery, Petitioner was also convicted of felon in possession of a firearm and felony-firearm. To convict him of these crimes, the jury necessarily found that he was one of the two men armed with handguns who directly committed the robbery. Moreover, the prosecutor's trial theory was that Petitioner was one of the two men who robbed the motel clerk and not that he was the third man who stayed in the car as a getaway driver. Because there is not reasonable likelihood that Petitioner was convicted as an aider and abettor, any error in the aiding

and abetting instruction did not have a substantial and injurious effect in determining the jury's verdict.  The claim, therefore, does not warrant habeas relief.

## E. Sentencing Errors

Petitioner's fifth claim asserts that the sentencing guidelines were scored incorrectly, and that his trial counsel was ineffective for failing to raise this objection during the sentencing hearing. Neither of these arguments presents a basis for granting habeas relief.

To the extent that Petitioner argues that the trial court erred in scoring the sentencing guidelines, his claims raise issues of state law and do not implicate any federal rights, and thus, his claim is non-cognizable on federal-habeas review. *Swarthout v. Cooke*, 562 U.S.   , 131 S.Ct. 859, 861, 178 L. Ed. 2d 732 (2011) (habeas-corpus relief does not lie for errors of state law) (*quoting Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *see also Landrum v. Mitchell*, 625 F.3d 905, 913 (6th Cir. 2010) (same). Therefore, Petitioner's assertion that his sentence is invalid because the trial court incorrectly scored OV 1 under the State's sentencing guidelines fails to state a claim for federal-habeas relief because it is a state-law claim and non-cognizable. *See Austin v. Jackson*, 213 F.3d 298, 300-01 (6th Cir. 2000) (citation omitted). Habeas relief is not warranted.

Petitioner further argues that trial counsel was ineffective for failing to object to the scoring of the offense variables. A defendant must satisfy a two-prong test to establish ineffective assistance of counsel. First, a defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. Id. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689. Second, the defendant must show that the deficient performance prejudiced his defense.

-17-

*Id.* Prejudice exists when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Petitioner is unable to show that he was prejudiced by counsel's failure to object to the scoring of these sentencing guidelines variables because he has not demonstrated that his sentence would have been any different. The Michigan Court of Appeals ruled that Offense Variable 1 of the Michigan Sentencing Guidelines had been correctly scored. *Lanton*, 2005 Mich. App. LEXIS 1468, *10. In light of these decisions, it is apparent that any objection to the scoring of the sentencing guidelines would have been futile and counsel was not ineffective for failing to do so. *See Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

### F. Post-Conviction Review Claims

Petitioner's remaining claims - his sixth through ninth- were presented to the state courts in his motion for relief from judgment and the appeal that followed its denial. Respondent asserts that review of these claims is barred because the state court decision rests on an independent and adequate state procedural ground.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." Mich. Ct. R. 6.508(D)(3)(b)(i).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

In the present case, the Wayne Circuit Court judge rejected petitioner's motion for relief from

judgment, finding that "Defendant has not shown 'good cause' under Mich. Ct. R. 6.508(D)(3) as to why the issues presented in the motion were not previously raised on appeal.  Further, he has not proven actual prejudice." *People v. Lanton*, No. 03-013764-02, Order, page 4 (Wayne Cir. Ct. June 16, 2009).  Because the trial court judge denied Petitioner post-conviction relief based on the procedural grounds stated in Rule 6.508(D)(3), Petitioner's post-conviction claims are clearly procedurally defaulted. *See Ivory v. Jackson*, 509 F. 3d 284, 292-93 (6th Cir. 2007); *See also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). Petitioner's remaining claims are therefore procedurally defaulted.

With respect to these claims, Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. Petitioner, however, has not shown that appellate counsel was ineffective. It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 463 U.S. at 754.

"[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions."  *Id*. at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a Strickland claim based on [appellate] counsel's failure to raise a particular claim[on appeal], but it is difficult to demonstrate that counsel was incompetent.

*Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (*quoting Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his post-conviction motion for relief from judgment. Petitioner's appellate counsel filed a substantial appeal brief which raised a number of  claims Petitioner still maintains entitle him to relief. Petitioner has not shown that appellate counsel's strategy in presenting some claims and not raising other claims was deficient or unreasonable. Petitioner has therefore failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano*, 228 F.3d 674, 682-83 (6th Cir. 2000).

Because Petitioner has failed to show cause to excuse his default, it is unnecessary to reach the prejudice issue regarding his post-conviction claims. *Smith*, 477 U.S. at 533; *See also Malcum v. Burt*, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).

Additionally, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298,

326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*

*v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires

petitioner to support his allegations of constitutional error with new reliable evidence — whether

it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence

— that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner's post-appeal counsel

presented an enhanced copy of the video tape to the state trial court in an effort to show that

Petitioner was not one of the perpetrators because the man standing in front of the motel counter

appeared to be wearing glasses and Petitioner did not wear glasses.  The prosecutor disputed the

assertion that glasses can be seen in the enhanced copy.  The trial court reviewed the enhanced video

and rejected Petitioner's claim, finding that enhancement was insufficient to support Petitioner's

claim of misidentification.   *People v. Lanton*, No. 03-013764-02, order, page 1 (Wayne Cir. Ct.

August 25, 2009).  The factual finding by the trial court that the enhanced video does not show what

Petitioner claims it shows is presumed correct.  28 U.S.C. §2254(e)(1).  Therefore, Petitioner has

not presented any new reliable evidence that he is innocent of the crimes, as such, a miscarriage of

justice will not occur if the Court declined to review petitioner's post-conviction claims on the

merits.

Finally, assuming that petitioner had established cause for his default, he would be unable

to satisfy the prejudice prong of the exception to the procedural default rule, because his claims

would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof

of both cause and prejudice. *See Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007). Petitioner

has failed to show that his post-conviction claims have any merit. Petitioner is not entitled to habeas

relief on his remaining claims. The Court denies the petition for writ of habeas corpus.

### IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28

U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37.  The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's claims.  The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because an appeal could not be taken in good faith.

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to proceed on appeal in forma pauperis is **DENIED**.

Dated:  April 4, 2013

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 4, 2013, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk